**UNITED STATES of America,**
**Plaintiff,**

v.

**Ismail Issa BARRE, a/k/a Ismail**
**Guled Ali, Defendant.**

**No. 03–CR–3067–B.**

United States District Court,
D. Colorado.

June 6, 2004.

Walter L. Gerash, Gerash Law Firm, PC, Edward A. Pluss, Federal Public Defenders Office, Mitchell Baker, Mitchell Baker & Associates, Earl Sherwood Wylder, Atty. at Law, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Defendant Ismail Barre was indicted on one count: knowingly conducting, controlling, managing, supervising, directing, or owning all or part of an unlicensed money transmitting business, in violation of 18 U.S.C. §§ 2 and 1960(a) and (b)(1)(A). On April 5, 2004, I granted Defendant's motion to declare 18 U.S.C. § 1960(b)(1)(A) unconstitutional because I concluded it infringed on Defendant's right to equal protection. *See United States v. Barre,* 313 F.Supp.2d 1086 (D.Colo.2004). The government, lacking trenchant analysis in its response to Defendant's initial motion, now moves to reconsider my Order. Upon further analysis, and despite Defendant's intrepid efforts to argue otherwise, I grant the government's motion.

### Discussion

#### Equal Protection

■ The Equal Protection Clause is invoked only when persons are similarly situated but treated differently. *See New York City Transit Authority v. Beazer,*

440 U.S. 568, 587–588, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). I previously held that the statute's "inevitable effect is the division of the group of similarly situated, unlicensed money transmitters into two classes. One class faces misdemeanor or felony sanctions by the state-and therefore, federal felony conviction under § 1960(a) and (b)(1)(A). The other class risks neither state criminal sanctions, nor consequently, application of § 1960(a) and (b)(1)(A)."

■ This dichotomy remains true. However, it is now evident that despite the existence of the two "classes," Defendant here is not "similarly situated" for equal-protection purposes with a money transmitter in a state that does not mandate the same licensing requirements as Colorado. The United States Supreme Court does not consider such a lack of uniformity between the states a constitutional impediment.

In *Clark Distilling Co. v. Western Maryland Ry. Co.*, 242 U.S. 311, 37 S.Ct. 180, 61 L.Ed. 326 (1917), the Supreme Court held that the Webb–Kenyon Act, which made it a federal offense to transport liquor from one state to another where it would be a violation of state law, was constitutional. Addressing a complaint for lack of uniformity similar to Defendant's here, the Court stated:

> So far as uniformity is concerned, there is no question that the act uniformly applies to the conditions which call its provisions into play-that its provisions apply to all the states,-so that the question really is a complaint as to the want of uniform existence of things to which the act applies [state laws] and not to an absence of uniformity in the act itself [which the Court held was uniformly applied across the country].

*Id.* at 326–327, 37 S.Ct. 180. The government cites another Supreme Court case for the proposition that there is no constitu-

tional infirmity in the fact that a federal law that depends upon the existence of state law for enforcement might lead to different results in different states. *See United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). There, the Court held that the Assimilative Crimes Act of 1948, which provided that conduct perpetrated within areas of federal jurisdiction were federal crimes if the state in which the federal enclave was located criminalized such conduct, was constitutional.

Finally, the government cites *United States v. Smaldone*, 485 F.2d 1333 (10th Cir.1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974). There, the Tenth Circuit ruled that 18 U.S.C. § 1955, which makes it a federal crime to run an illegal gambling business as defined by state law, was constitutional. The defendant there argued the law denied him equal protection through its geographic enforcement. "As the law now stands, gambling activity conducted in one state may be a federal offense, which the same activity in another state may be sanctioned by the law." *Id.* at 1343. However, relying on *Clark Distilling*, the Tenth Circuit concluded that the defendant did not have a cognizable equal-protection claim. *See also, United States v. Villano*, 529 F.2d 1046 (10th Cir.1976).

Defendant contends the cases cited by the government are either archaic or too far removed from the equal-protection schema to act as precedent here. I disagree. The government has now convinced me that, despite whatever facial incongruities might exist between many of the cases and this case, the fundamental result-that the federal government may base its laws on the presence of state law-is constitutionally sanctioned.

Section 1960 applies uniformly to all states. It is true that it piggy-backs state

money-transmitting laws, and therefore its effects are only felt by people in states that regulate money transmitting. However, it is the states that do not uniformly regulate money transmitting, not § 1960. If a state has money-transmitting licensing laws, § 1960 enhances those laws. If a state does not have such laws, § 1960 lies dormant with respect to that state. If such a state enacts money-transmitting laws in the future, § 1960 will apply there as well.

■■■ Alternatively, the government has finally persuaded me that if § 1960 somehow presents an equal-protection problem, Defendant's challenge still fails because § 1960 meets the rational-basis test. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Johnson v. Robison*, 415 U.S. 361, 374–375, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). The government points to the legislative history that provides some rational basis for enactment of § 1960.

The Senate Report in which the Senate discussed 18 U.S.C. § 1960(b)(1)(A) states:

Since the Federal government has left regulation of [money transmitting] businesses to the States and the States have not devoted sufficient resources to the effort, these industries represent a gaping hole in the money laundering deterrence effort. The legislation does not completely solve these problems, but it significantly increases the Federal role in working with the States to deter money laundering. The legislation does not preempt State laws. *Instead, it provides for an expanded Federal role in a way that enhances and supplements State regulation.*

S. Rep. 101–460, Sept. 12, 1990 (emphasis added).

It is clear to me upon this legislative history that Congress' choice to bolster state laws requiring money—transmitting licenses with federal law rationally—and inevitably—creates the differences in enforcement about which Defendant complains. The Supreme Court has explained that "if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Because the object of the legislation is to improve upon state laws in existence, the *de facto* "classification"—if it exists at all, and for equal-protection purposes, I hold it does not-created by the law is rationally based. Upon this conclusion, I need not reanalyze § 1960 under strict scrutiny, except to acknowledge the government's contention that strict-scrutiny rarely, if ever, applies to criminal laws.

**Vagueness**

Because I reconsider my April 5, 2004 Order, I address Defendant's assertion that § 1960 is unconstitutionally vague. First, Defendant contends there are inconsistent *mens rea* elements in the law. Second, he argues that the statute's definition of a "money transmitting business" is unintelligible. I conclude that both arguments are unfounded.

■■■ A penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. LaHue*, 261 F.3d 993, 1005 (10th Cir.2001). I examine the statute as applied to Defendant. *Id.* Moreover, I presume the statute is constitutional, unless I am satisfied beyond a reasonable doubt that the legislature "went beyond the confines of the Con-

stitution." *United States v. Day,* 223 F.3d 1225, 1228 (10th Cir.2000).

Section 1960(a) prohibits a person from "knowingly" conducting an unlicensed money-transmitting business. Sub-section (b)(1)(A) applies when the failure to obtain a license is punishable by state law, "whether or not the defendant knows that the operation was required to be licensed or that the operation was so punishable." It is undisputed that Barre knew he was operating a money-transmitting business in Colorado, and knew he did not have a license for it, whether or not he knew a license was needed. Ignorance of Colorado's licensing requirements is not a defense.

Defendant argues that sub-section (b)(1)(A) and (b)(1)(B) are inconsistent. Sub-section (b)(1)(B), which defines "illegal money-transmitting business" in the second alternative, reads: "[which] fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section." First, Defendant was charged under (b)(1)(A), so the *mens rea* requirement of (b)(1)(B) does not apply to him.

Second, I conclude sub-section (b)(1)(B) does not provide an inconsistent *mens rea,* even if it did apply to Defendant. A "failure to comply" does not connote a knowledge of the need to comply with the section 5330 of Title 31 in the first place, just as a failure to obtain a license does not connote a knowledge that a license is required.

Defendant's second argument-that the definition of money-transmitting business is "unintelligible" is also without basis. Section 1960(b)(2) provides:

the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this coun-try or to locations abroad by wire, check, draft, facsimile, or courier. . . .

The Second Circuit has held this to impart "sufficient clarity to comport with the constitutional fair-notice requirement." *United States v. Velastegui,* 199 F.3d 590, 595 (2nd Cir.1999). I agree and come to the same conclusion. For these reasons, Defendant's vagueness challenges fail.

ACCORDINGLY, IT IS ORDERED THAT:

1) The government's motion to reconsider my Order of April 5, 2004 is GRANTED; and

2) DEFENDANT's motion to declare 18 U.S.C. § 1960(b)(1)(A) unconstitutional is DENIED.