**UNITED STATES of America, Plaintiff,**

v.

**Mohummed Islam UDDIN, Defendant.**

No. 04–CR–80192.

United States District Court, E.D. Michigan, Southern Division.

April 11, 2005.

Julia C. Pidgeon, Detroit, MI, for Plaintiff.

Federal Defender, Detroit, MI, Majed A. Moughni, Dearborn, MI, Paul J. Stablein, Dickow & Trivax, Farmington Hills, MI, for Defendant.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT*

ROSEN, District Judge.

## I. *INTRODUCTION*

Defendant Mohummed Islam Uddin is charged in a one-count Indictment with violating 18 U.S.C. § 1960(a) by knowingly conducting an "unlicensed money transmitting business," as that term is defined in Section subsection (b)(1)(B) of the statute. The Indictment charges a violation from January 1, 2002 until December 3, 2003, during which time Defendant allegedly

transmitted within the United States and to locations abroad, at least $4,000,000 in funds.

Subsection (b)(1) of Section 1960(a) provides three alternative definitions of "unlicensed money transmitting business." It is undisputed that the Government's Indictment is predicated only on the definition set forth in Subsection (b)(1)(B), which defines "unlicensed money transmitting business" as a money transmitting business that "fails to comply with the money transmitting business registration requirements under Section 5330 of title 31, United States Code, or regulations prescribed under such section."

Defendant does not dispute that he operated a money transmitting business nor does he dispute that the business was not registered with the Secretary of Treasury as required under 31 U.S.C. § 5330. Defendant, however, maintains that, in addition to alleging that he operated a money transmitting business and that the business was not registered, the Government is also required allege, and ultimately prove, that he *knew of the federal registration requirement* and that he *intentionally failed to register* his business. Because such allegations are lacking, Defendant argues that the Indictment must be dismissed.

1. 31 U.S.C. § 5330 provides, in pertinent part:

> **(a) Registration with Secretary of the Treasury required.—**
> (1) **In general.**—Any person who owns or controls a money transmitting business shall register the business (whether or not the business is licensed as a money transmitting business in any State) with the Secretary of the Treasury not later than the end of the 180–day period beginning on the later of—
> (A) the date of enactment of the Money Laundering Suppression Act of 1994; or
> (B) the date on which the business is established.

## II. DISCUSSION

18 U.S.C. § 1960 provides, in pertinent part, as follows:

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than five (5) years, or both.

(b) As used in this section—

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

> (A) is operated without an appropriate money transmitting license in a state where such an operation is punishable as a misdemeanor or a felony under state law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

> (B) fails to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, or regulation prescribed under such section;[1] or

(2) **Form and manner of registration.**—Subject to the requirements of subsection (b), the Secretary of the Treasury shall prescribe, by regulation, the form and manner for registering a money transmitting business pursuant to paragraph (1).
(3) **Businesses remain subject to State law.**—This section shall not be construed as superseding any requirement of State law relating to money transmitting businesses operating in such State.
(4) **False and incomplete information.**—The filing of false or materially incomplete information in connection with the registration of a money transmitting business shall be considered as a failure to comply with the requirements of this subchapter.

(C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity; . . .

18 U.S.C. § 1960(a), (b)(1).

The current above-quoted provisions of Section 1960 are the product of the Patriot Act. Prior to the Patriot Act amendments to Section 1960, the statute provided, in pertinent part, as follows:

(a) Whoever conducts, controls, manages, supervises, directs or owns all or part of a business *knowing the business is an illegal money transmitting business,* shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section—

(1) The term "illegal money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

(A) is *intentionally operated without an appropriate money transmitting license* in a State where such operation is punishable as a misdemeanor or a felony under State law; . . .

Subsection (b)(1)(B) remained unchanged, as it provided both prior to and after the Patriot Act amendments, that an unlicensed money transmitting business was also one that

(b) **Contents of registration.**—The registration of a money transmitting business under subsection (a) shall include the following information:
(1) The name and location of the business.
(2) The name and address of each person who-
(A) owns or controls the business;
(B) is a director or officer of the business; or
(C) otherwise participates in the conduct of the affairs of the business.

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulation prescribed under such section; . . . .

The Department of Justice summarized the amendment's purpose in its *Report from the Field: The USA PATRIOT Act at Work:*

The USA Patriot Act also strengthened the criminal laws against terrorism by making it easier to prosecute those responsible for funneling money to terrorists. Under previous federal law, 18 U.S.C. § 1960, those who operated unlicensed money transmitting businesses were entitled to rely on the affirmative defense that they had no knowledge of the applicable state licensing requirements. Some of these businesses, called hawalas, have funneled extensive amounts of money to terrorist groups abroad. *Section 373 of the USA PATRIOT Act amended federal law by eliminating this loophole requiring that the defendant know about state licensing requirements* . . . .

DOJ Report 10 (July 2004), (quoted in *United States v. Talebnejad,* 342 F.Supp.2d 346, 348 (D.Md.2004)).

As indicated, Defendant Uddin is charged only under subsection(b)(1)(B) for operating an unlicensed money transmitting business while that business was required to be registered with the Secretary

(3) The name and address of any depository institution at which the business maintains a transaction account (as defined in section 19(b)(1)(C) of the Federal Reserve Act).
(4) An estimate of the volume of business in the coming year (which shall be reported annually to the Secretary).
(5) Such other information as the Secretary of the Treasury may require.
31 U.S.C. § 5330(a), (b).

of Treasury pursuant to 31 U.S.C. § 5330. Defendant's argument in this Motion to Dismiss is that a violation of 18 U.S.C. § 1960(a) is a specific intent crime requiring proof not only that the defendant knew that his money transmitting business did not have a license but also that the defendant knew of the federal registration requirement and intentionally failed to comply with that requirement. The Government counters that 18 U.S.C. § 1960(a) is only a general intent crime that premises guilt on the defendant's conduct, not on his state of mind.

In support of his specific intent/ *mens rea* requirement argument, Defendant relies upon the decision of the U.S. District Court for the District of Maryland in *United States v. Talebnejad, supra.* Defendant's reliance on the *Talebnejad* case, however, is unavailing.

First of all, the defendant in *Talebnejad* was only indicted under 18 U.S.C. § 1960(b)(1)(**A**) and, as such, the only real issue in that case involved the question of a *mens rea* requirement with regard to a violation of Section 1960(a) predicated upon a money transmitting business that was not licensed in Maryland, a state that requires state licensing where a failure to obtain such a license is punishable under state law as either a misdemeanor or a felony as provided in subsection (b)(1)(**A**) of the statute. (Michigan does not require money transmitting businesses to have a license or to otherwise register with the state.) It was only because Maryland state

law, Section 12–405 of the Financial Institutions Article of the Maryland Code, renders punishable as a felony only a "knowing and willful" failure to obtain a license [2] that the federal district court read into 18 U.S.C. § 1960(b)(1)(A) a *mens rea* requirement, notwithstanding the second clause of subsection (A) which provides that a person is guilty of a violation of 18 U.S.C. § 1960 for operating a money transmitting business without obtaining a state license to do so "whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable [under state law]." Because of the state law's "knowing and willful" requirement, the federal district court held that

> To the extent that any prosecution under 18 U.S.C. § 1960 may go forward on the basis of a Defendant's lack of a Maryland license, the Government must establish that the lack of license was knowing and willful, *i.e.*, that the defendant knew that his lack of license was illegal and that he acted or failed to act intentionally with respect to that fact.

342 F.Supp.2d at 354.

Because the indictment failed to show that Talebnejad knew that noncompliance with the Maryland licensing statute was criminal, the federal district court dismissed the indictment, without prejudice.

Although not required to do so, the *Talebnejad* court then proceeded to find that, "by implication," subsection (b)(1)(**B**) of § 1960 also incorporates a *mens rea* re-

---

**2.** Section 12–405 of the Financial Institutions Article of the Maryland Code provides that:

A person may not engage in the business of money transmission if that person, or the person with whom the person engages in the business of money transmission, is located in the State unless that person:
(1) is licensed by the Commissioner;
(2) is an authorized delegate of a licensee under whose name the business of money transmission occurs; or

(3) is a person exempted from licensing under this subtitle.
Section 12–430 of the Article sets out the penalties for violation of the law:

Any person who *knowingly and willfully* violates any provision of this subtitle is guilty of a felony and on conviction is subject to a fine not exceeding $1,000 for the first violation and not exceeding $5,000 for each subsequent violation or imprisonment not exceeding 5 years or both.

quirement, *i.e.*, that it must be shown that a defendant knew he was required to register his money transmission business with the U.S. Treasury and that he intentionally failed to do so. The court reached this conclusion "based ... upon Congress's failure to amend 18 U.S.C. § 1960(b)(1)(B) when it amended § (b)(1)(A) [and] the conventional understanding that *mens rea* is a fundamental component of every criminal act." 342 F.Supp.2d at 356 (citing *Morissette v. United States*, 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).

The *Talebnejad* court's reasoning with regard to subsection (b)(1)(B) is flawed because, as indicated above, there was no need to amend the federal registration subsection; the only "loophole" that existed in the prior version of the statute was in subsection (A) which, before the Patriot Act amendments, required the government to show that the defendant knew that state law required a license to operate a money transmitting business and intentionally operated the business without an appropriate state license. The prior version of subsection (B) contained no such "loophole," and therefore, no amendment to subsection (B) was needed.

Indeed, the legislative history of the Patriot Act amendment to Section 1960 makes clear that a section 1960 violation is a general intent crime that does not require proof of the defendant's knowledge of the federal registration requirement:

> First, section 104 clarifies the scienter requirement in § 1960 to avoid problems that occurred when the Supreme Court interpreted the currency transaction reporting statutes to require proof that the defendant knew that structuring a cash transaction to avoid the reporting requirements had been made a criminal offense. See *Ratzlaf v. United States*, 510 U.S. 135, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). **The proposal makes clear that an offense under § 1960 is a general intent crime for which a defendant is liable if he knowingly operates an unlicensed money transmitting business.** For purposes of a criminal prosecution, the government would not have to show that the defendant knew that a State license was required or that the Federal registration requirement promulgated pursuant to 31 U.S.C. § 5330 applied to the business.

See Rept. 107–250, H.R. 3004, at 54. Financial Anti–Terrorism Act of 2001. Report of Committee on Financial Services.

Furthermore, to accept the *Talebnejad* court's reasoning, the Court would have to ignore well-settled rules of statutory construction. Determining the intent of a federal crime is a question of law requiring construction of the statute and inference of the intent of Congress. The language of the statute is the starting point of this inquiry. *Staples v. United States*, 511 U.S. 600, 604–605, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994). When the statute at issue is clear, makes sense, and does not contain inconsistencies or ambiguities, "the inquiry ends with a cogent means of reading the plain language of the statute." *United States v. Kelley Technical Coatings, Inc.*, 157 F.3d 432, 439 (6th Cir.1998) (citations omitted).

Here, the statute describes the offense as "knowingly" conducting, controlling, managing, supervising, directing or owning an unlicensed money transmitting business. See 18 U.S.C. § 1960(a). The Supreme Court has held that, absent a different result dictated by the text of the statute, "the term 'knowingly' merely requires proof of the knowledge of the facts that constitute the offense." *See Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998). Had Congress intended that the statute required proof of the defendant's knowledge of the federal registration or state licensing re-

quirements, it would have used the word "wilful." *See id.* at 192–193.

This is what the court concluded in *United States v. Barre,* 324 F.Supp.2d 1173 (D.Colo.2004), another case involving construction of 18 U.S.C. § 1960.[3] Although the *Barre* case primarily addressed the defendant's claim that Section 1960 violated his equal protection rights, the defendant also argued that the statute was unconstitutionally vague in that subsections (b)(1)(A) (state licensing) and (b)(1)(B) (Treasury registration) imposed inconsistent *mens rea* with only the latter requiring proof of the defendant's knowledge of the need to register pursuant to 31 U.S.C. § 5330. The court rejected this argument.

In reaching its decision, the *Barre* court focused on the use of the term "knowingly" in subparagraph (a), and concluded that the use of the term expressed a legislative intent that the violation be one of general rather than specific intent:

A "failure to comply" [with the Treasury registration requirements] does not connote a knowledge of the need to comply with section 5330 of Title 31 in the first place, just as a failure to obtain a license [where required by state law] does not connote a knowledge that a license is required.

324 F.Supp.2d at 1177.

Moreover, placing the description of the offense and the definition of the terms used to describe the offense in separate subsections of Section 1960 demonstrates that Congress did not intend for proof of the defendant's knowledge of either state licensing or federal registration requirements to be an element of a Section 1960 offense. This reading is consistent with the interpretation given by courts, including the Sixth Circuit, to 18 U.S.C. § 1955 upon which Section 1960 was modeled and

the structure of which parallels the instant statute.

18 U.S.C. § 1955 prohibits the conducting of an illegal gambling business. Subsection (a) of § 1955, like subsection (a) of § 1960, sets forth the offense:

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1955(a).

Subsection (b) of Section 1955 defines "an illegal gambling business":

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) *is a violation of the law of a State or political subdivision in which it is conducted;*

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

18 U.S.C. § 1955(a), (b) (emphasis added).

The Sixth Circuit rejected an argument that conviction under Section 1955 requires proof that the defendant knowingly violated state law, holding that Section 1955 did not require such proof. *United States v. Ables,* 167 F.3d 1021, 1031 (6th Cir.1999). Citing with approval the Tenth Circuit's holding in *United States v. O'Brien,* 131 F.3d 1428 (10th Cir.1997), the *Ables* court held that the *mens rea* required to establish a Section 1955 violation was only a demonstration that the defendant knew that his or her act was one of

---

**3.** *Barre* is the only case the Court has found which addresses this issue.

participating in gambling. The court reasoned as follows:

Ables asserts on appeal that the district court erred in not instructing the jury [that] in order to secure a conviction under § 1955, the government must prove that Ables "knowingly" violated the law of Kentucky. This court, however, has rejected such an argument. *See United States v. Sims,* Nos. 95–5009, 95–5010, 1995 WL 620965 at * 7 (6th Cir. 1995) (unpublished disposition).

In *Sims,* the defendants contended that the district court erred in failing to include a definition of the term "knowingly" in the jury instructions on the substantive crime of conducting an illegal gambling business in violation of § 1955. This court found the defendants' contention unpersuasive, holding that the "crime spelled out in 18 U.S.C. § 1955 is a general intent crime, where 'a defendant need not be shown to have acted willfully in the·sense of intentionally violating a known state legal duty.'" *Id.* (quoting *United States v. Conley,* 859 F.Supp. 909, 930 (W.D.Pa.1994)). Accordingly, the *Sims* court held that the district court did not err in failing to instruct the jury on [the] meaning of "knowingly."

While an unpublished opinion has no precedential force, we are persuaded by the reasoning in *Sims.* We are thus satisfied that Ables was not entitled to the request good faith instruction on the § 1955 charge. Because the crime of conducting an illegal gambling business as defined under § 1955 is one of general intent, Ables cannot evade conviction under that section by establishing that he unwittingly or unknowingly conducted the bingo games at Castle Bingo in violation of the law of Kentucky.

167 F.3d at 1031.

The Sixth Circuit's construction of the statute in *Ables* is consistent with that of a number of other circuits. *See United States v. O'Brien, supra; United States v. Cyprian,* 23 F.3d 1189, 1199 (7th Cir.1994) (guilt under § 1955 is premised on conduct and therefore to be convicted the defendant need only know that he performed the acts which turned out to be illegal); *United States v. Hawes,* 529 F.2d 472, 481 (5th Cir.1976) (to establish a violation of § 1955, the government need only show that appellants intended to do all of the acts prohibited by the statute and proceeded to do them). "Section 1955 incorporates state law by reference to describe those gambling businesses which are violative of federal law. The acts which must be intended ... include conducting, financing, managing, supervising and owning an illegal gambling business. Thus, intent to violate state law is not a necessary element of a § 1955 crime." *Id.* (citations omitted).

Given the Sixth Circuit's construction of § 1955 upon which § 1960 is modeled, this Court finds it unlikely that the Sixth Circuit would be persuaded by the Maryland District Court's decision in *Talebnejad.* The Sixth Circuit's decisions in *Ables* and *Sims* are well-reasoned and comport with Supreme Court precedent concerning statutory construction. Accordingly, this Court declines Defendant's invitation to follow *Talebnejad.*

Defendant Uddin also suggests that only "public welfare" crimes carrying minor penalties can be read as having no *mens rea;* all other statutes, according to Defendant, require a showing of wilfulness or specific intent to violate a known legal duty. In support, Defendant relies upon *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) and *United States v. Ahmad,* 101 F.3d 386 (5th Cir.1996). However, the Sixth Circuit expressly rejected this argument in *Kelley Technical Coatings, Inc., supra,* observing that both *Staples* and *Ahmad* focused on

the requirement that the defendant's knowledge of particular facts be proved—in *Staples,* that the firearm was capable of firing automatically, and in *Ahmad,* that the substance discharged was a pollutant. "None of these cases held that knowledge of the law or regulatory requirements was an element of the offense." *Kelley Technical Coatings, Inc.,* 157 F.3d at 438.

### CONCLUSION

In sum, the Court finds that Section 1960(a) requires only proof that the money transmitting business was unlicensed in that it was not registered with the Department of Treasury as required by 31 U.S.C. § 5330. It does not require proof that the defendant knew of the federal registration requirement; the Government need only allege that Defendant knew that he was operating a money transmitting business and knew that the business did not have a license or registration.

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss is DENIED.