UNITED STATES of America

v.

**Sammer Ahmad RAHMAN, and Nabeel Ahmad Rahman, Defendants.**

No. 4:05-CR-63-1-D2, 4:05-CR-63-2-D2.

United States District Court,
E.D. North Carolina,
Eastern Division.

Jan. 20, 2006.

John P. O'Hale, Narron, O'Hale & Whittington, Smithfield, NC, Larry J. McGlothlin, Fayetteville, NC, for Sammer Ahmad Abdel Rahman, Defendant.

Jerry Wayne Leonard, Law Office of Jerry Leonard, Joseph E. Zeszotarski, Jr., Poyner & Spruill, Raleigh, NC, for Nabeel Ahmad Rahman, Defendant.

John Bowler, U.S. Attorney's Office, Raleigh, NC, for USA, Plaintiff.

## ORDER

DEVER, District Judge.

On October 24, 2005, defendant Nabeel Ahmad Rahman moved to dismiss Count 54 of the indictment on various grounds, including that it failed to allege an essential element of the crime as it was defined in 18 U.S.C. § 1960 during a portion of the time period charged in the count. Defendant Sammer Ahmad Abdel Rahman[1] filed a motion to dismiss Count 54 on November 18, 2005. On December 9, 2005, the government filed a response to a number of pre-trial motions, including the motions to dismiss Count 54.

Because Count 54 of the indictment fails to allege all of the essential elements of a violation of section 1960 as it was defined during a portion of the time period in which defendants allegedly violated the statute and deprives the defendants of a

1. Nabeel Rahman and Sammer Rahman are referred to collectively as "defendants."

defense available according to law at the time when the act was allegedly committed, it is dismissed.

## I.

■ Defendants argue that Count 54 should be dismissed because:

(1) The count fails to allege all essential elements of the crime charged in that count for a portion of the time period in which the count alleges criminal activity took place;

(2) If 18 U.S.C. § 1960 creates strict liability without requiring proof that a defendant knew of a state licensing requirement, it is unconstitutional; and

(3) The count fails to allege that either defendant was not exempt under the North Carolina Money Transmitters Business Act.

Sammer Rahman Mot. 1.

Count 54 of the indictment charges:

Beginning on or about February 1, 2000, and continuing to on or about May 1, 2005, defendants SAMMER AHMAD ABDEL RAHMAN and NABEEL AHMAD RAHMAN, did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business as defined in Title 18, United States Code, Section 1960(b), in and affecting interstate and foreign commerce, that is, defendants did operate "Wella Mena, Inc." doing business as "Reid's Mart" in Hubert, North Carolina, which during the charged time frame, regularly engaged in the cashing of checks in exchange for a fee without having obtained the required license from the State of North Carolina, and did aid and abet each other in doing so; in violation of Title 18, United States Code, Section 1960 and 2.

Indict. 8–9. Section 1960, as currently codified, reads, in part:

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section—

(1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

(A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, *whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;*

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; . . . .

18 U.S.C. § 1960 (2001) (emphasis added).

## II.

The defendants contend that Count 54 must be dismissed because it fails to allege all essential elements of the crime charged for a portion of the time period in which the count alleges criminal activity took place. Count 54 alleges that the defendants violated section 1960 from February 2000 through May 2005. As part of the Patriot Act, section 1960 was amended. *See* USA PATRIOT Act, Pub.L. No. 107–56, § 373(a), 115 Stat. 272, 339 (2001). On October 26, 2001, the President signed the Patriot Act into law and the amendments

became effective. *See* United States Department of Justice, *Report From The Field: The USA PATRIOT Act At Work*, at 1 (July 2004), available at *http://www.lifeandliberty.gov/docs/071304 report from the field.pdf* (hereafter, "US DOJ Report"); President George W. Bush, Remarks by the President at Signing of the Patriot Act, available at *http://www.wh itehouse.gov/news/releases/2001/10/20011026–5.html* ("The changes, effective today, will help counter a threat like no other our nation has ever faced.") (Oct. 26, 2001).

■ An amended federal criminal statute cannot be applied retroactively if the amendment expands the range of conduct made illegal under that statute. *See* U.S. Const. art. 1, § 9, cl. 3 (no "ex post facto Law shall be passed"); *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (explaining that Ex Post Facto Clause prohibits laws that "retroactively alter the definition of crimes"); *cf. United States v. Talebnejad*, 342 F.Supp.2d 346, 356–57 (D.Md.2004) ("If that law was modified at any time during the indictment period, the Indictment would have to allege (and the Government would eventually have to prove) the elements of the offense for activities occurring before the change and the elements of activities occurring after."). Accordingly, if Count 54 fails to allege an essential element of the crime charged as the crime was defined at the time of the alleged criminal conduct, or if it deprives a defendant of an affirmative defense available according to law at the time the act was committed, it must be dismissed. *See Collins*, 497 U.S. at 52, 110 S.Ct. 2715 (a law that would "deprive one charged with [a] crime of any defense available according to law at the time when the act was committed" would violate the Ex Post Facto Clause); *United States v. Daniels*, 973 F.2d 272, 274–76 (4th Cir.1992) (reversing

conviction of violation of 26 U.S.C. § 5861 because indictment failed to allege essential element of the offense).

Before the 2001 amendments, section 1960 read, in part:

(a) Whoever conducts, controls, manages, supervises, directs, or owns all or part of a business, *knowing* the business is an illegal money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section—

(1) the term 'illegal money transmitting business' means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

(A) is *intentionally* operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law; or

(B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section;

18 U.S.C. § 1960 (subsequently amended) (emphasis added).

The plain language of the statute supports the defendants' position. *Cf. United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir.1988) (explaining that when the terms of a "statute are unambiguous on their face, or in light of ordinary principles of statutory interpretation, then judicial inquiry is complete") (quotations omitted). In the pre-Patriot Act version of section 1960, a defendant had to undertake conduct while "knowing [his] business is an illegal money transmitting business." 18 U.S.C. § 1960(a) (previous version). The

pre-Patriot Act version of section 1960 then defined "illegal money transmitting business" in section 1960(b)(1)(A) to include a business that is *"intentionally* operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or felony under State law . . . ." 18 U.S.C. § 1960(b)(1)(A) (previous version) (emphasis added). Thus, the statute's plain language suggests that knowledge of state licensing requirements constituted an element of a section 1960 violation before that section was amended in 2001.

The legislative history of section 1960 confirms that Congress' purpose in amending section 1960 in 2001 was to clarify that section 1960 is a general intent crime and does not require a defendant to know that an illegal money transmitting business was required to be licensed under state law. *See* H.R.Rep. No. 107–250, at 54 (2001). Indeed, section 373(a) of the Patriot Act, which amended 18 U.S.C. § 1960, was entitled "Scienter Requirement for Section 1960 Violation." USA PATRIOT Act, Pub.L. No. 107–56, § 373(a), 115 Stat. 272, 339 (2001).

Other sources also buttress this interpretation of the pre-Patriot Act version of section 1960. The United States Department of Justice summarized the purpose of the amendment to section 1960:

> The USA PATRIOT Act also strengthened the criminal laws against terrorism by making it easier to prosecute those responsible for funneling money to terrorists. Under previous federal law, 18 U.S.C. § 1960, those who operated unlicensed money transmitting businesses were entitled to rely on the affirmative defense that they had no knowledge of the applicable state licensing requirements. Some of these businesses, called hawalas, have funneled extensive amounts of money to terrorist groups abroad. *Section 373 of the USA PATRIOT Act amended federal law by eliminating this loophole requiring that the defendant know about state licensing requirements . . . .*

US DOJ Report 10 (emphasis added) (quoted in *Talebnejad,* 342 F.Supp.2d. at 349).

The defendants chiefly rely on *Talebnejad,* 342 F.Supp.2d 346. In that case, the court analyzed a superceding indictment in which the violations of section 1960 were alleged to have taken place beginning on October 26, 2001, the day in which the amendments to section 1960 became effective. *Id.* at 350.[2] Accordingly, *Talebnejad* dealt only with the new version of section 1960, rather than the version of section 1960 that governed the beginning of the time period alleged in Count 54. As such, *Talebnejad* is of little help in addressing the defendants' first argument. However, the *Talebnejad* court did conclude, albeit in dicta, that the pre-Patriot Act version required a defendant to know of state licensing requirements before he could be found in breach of the law. *See id.* at 353 ("There is no doubt that Congress attempted to exclude any *mens rea* requirement when it amended § [1960](b)(1)(A).").

In responding to these motions to dismiss, the government chiefly relies on *United States v. Uddin,* 365 F.Supp.2d 825 (E.D.Mich.2005). In *Uddin,* the court analyzed conduct that took place entirely after the October 26, 2001 amendments became

---

**2.** The government had originally alleged conduct in violation of section 1960 that took place before the amendments became effective. *Talebnejad,* 342 F.Supp.2d at 358. After the government responded to the de-

fendants' motion to dismiss, the grand jury returned a second superceding indictment alleging violations of section 1960 that took place only after the amendments became effective. *Id.*

effective and dealt only with the statute as currently worded. *Id.* The court analyzed only the definitional prong in section 1960(b)(1)(B) relating to the failure to abide by the requirements of 31 U.S.C. § 5330. *Id.* at 826. Unlike *Uddin,* the indictment in this case alleges only that the defendants were not in compliance with state licensing requirements as referenced in section 1960(b)(1)(A); therefore, section 1960(b)(1)(B) is not at issue. Moreover, in *Uddin,* the defendant argued that the government was required to allege that "he **knew** *of the federal registration requirement* and that he **intentionally** *failed to register* his business." *Id.* (emphasis in original). In rejecting this argument, the court in *Uddin* expressly disagreed with the *Talebnejad* court's holding that the federal registration prong in section 1960(b)(1)(B) also had a *mens rea* requirement. *Id.* at 828–29. In doing so, the court in *Uddin* contrasted subsection 1960(b)(1)(B) with the previous version's subsection 1960(b)(1)(A) regarding state law licensing. The *Uddin* court stated:

> The *Talebnejad* court's reasoning with regard to subsection (b)(1)(B) is flawed because, as indicated above, there was no need to amend the federal registration subsection; the only "loophole" that existed in the prior version of the statute was in subsection [ (b)(1) ](A) *which, before the Patriot Act amendments, required the government to show that the defendant knew that state law required a license to operate a money transmitting business and intentionally operated the business without an appropriate state license.* The prior version of subsection (B) contained no such "loophole," and therefore, no amendment to subsection (B) was needed.

*Uddin,* 365 F.Supp.2d at 829 (emphasis added). Thus, *Uddin* supports the defendants' central contention that before the Patriot Act amendments, section 1960(b)(1)(A) required a scienter showing that is not alleged in Count 54 of the indictment.

Finally, the only circuit court that addressed this scienter issue in interpreting the pre-Patriot Act version of section 1960 stated that subsection 1960(b)(1)(A) required an individual to be aware of any state licensing requirements before he could violate the statute. *See United States v. Velastegui,* 199 F.3d 590, 595 n. 4 (2d Cir.1999) (analyzing case involving subsection 1960(b)(1)(A) and stating that section 1960 "requires that the defendant know the business was an 'illegal money transmitting business.'"). Moreover, the government has not cited, and the court could not locate, a single decision interpreting the pre-Patriot Act version of subsection 1960(b)(1)(A) in the manner that the government now advocates. This fact further confirms Congress' intent in amending section 1960.

### III.

Because Count 54 fails to allege that defendants knew of any state licensing requirements and intentionally operated their businesses without meeting these requirements between February 1, 2000 and October 26, 2001, it fails to allege an essential element of the crime as it was defined at the time of the alleged offense. Further, Count 54 deprives the defendants of a defense available according to law at the time when the act was allegedly committed. Accordingly, defendants' motions to dismiss Count 54 of the indictment are GRANTED, and Count 54 is DISMISSED. In light of this holding, the court need not and does not address defendants' other two challenges to Count 54.