**UNITED STATES of America,
Appellant,**

v.

**Galo VELASTEGUI, also known as
Galo R. Velastegui, and GMJ Travel &
Shipping Corp., Defendants–Appellees.**

**Docket No. 99–1362**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 26, 1999

Decided: Dec. 13, 1999

---

Peter B. Sobol, Assistant United States Attorney, New York, N.Y. (Mary Jo White, United States Attorney, Paul A. Engelmayer and Ira M. Feinberg, Assistant United States Attorneys, of counsel), for Appellant.

Raymond J. Aab, New York, N.Y. (Carol Kahn, of counsel), for Defendants–Appellees.

Before OAKES, POOLER and KATZMANN, Circuit Judges.

OAKES, Senior Circuit Judge:

The United States appeals from two orders entered by the United States District Court for the Southern District of New York dismissing counts one and two of the indictment charging Galo R. Velastegui and GMJ Travel & Shipping Corporation ("GMJ") (collectively "Defendants")[1] with engaging in an unlawful money transmitting business. The second order was issued after the Government moved for reconsideration and the district court adhered to its earlier ruling dismissing those counts. We determine that the particular conduct alleged in the indictment falls within the ambit of conduct that 18 U.S.C. § 1960(a) makes criminal. Accordingly, we reverse.

## BACKGROUND

This case involves the business of money transmitting. A money transmitting business receives money from a customer and then, for a fee paid by the customer, transmits that money to a recipient in a place that the customer designates, usually a foreign country. After the customer gives the money transmitter an amount to send to the designee, the transmitter notifies the "payer" with whom it has a contractual arrangement in the recipient country. The payer then notifies the designated recipient of the money, and pays the money to the designee at the payer's office. The transmitter then remits to the payer the amount paid to the designee, plus the payer's commission.

GMJ is a New York corporation that was employed as an agent of several licensed money transmitting businesses. It did not have a New York license authorizing it to engage in the direct transmission of money. Generally, GMJ's agency agreements appointed GMJ for the sole purpose of collecting money for transmission by the licensed principal. GMJ does not dispute that, in contravention of these agreements, it often sent funds left for transmission by its principals directly to Mexican payers. Additionally, the Government proffered in its motion for reconsideration that the evidence at trial would show (1) that GMJ had transmitted millions of dollars to recipients in Mexico and elsewhere, entirely outside of its agency relationships with licensed transmitters; (2) that it did not purport to act as an agent of any licensee when it made those transmissions; and (3) that it did not share commissions for those transmissions with any licensee.[2] As a result of GMJ's breaches of its agency agreements, each principal canceled its agency contract with GMJ. At all times relevant to this indictment, however, GMJ operated as an agent of at least one New York state licensed money transmitting business.

Defendants were indicted on September 2, 1998, on three counts. They are charged with two counts of illegal money transmitting, in violation of 18 U.S.C. § 1960(a) and 18 U.S.C. § 2 (1999), and one count of money structuring, in violation of 31 U.S.C. § 5324(a)(3) and (c)(2) (1999), and 18 U.S.C. § 2.

1. Velastegui is president of GMJ and its sole shareholder.

2. There was no basis for the District Court to assume that GMJ, in transmitting money without a license, had done so only on behalf of an entity with which it had an agency agreement. On the government's appeal from an order dismissing an indictment, the facts alleged by the government must be taken as true. See United States v. Rosengarten, 857 F.2d 76, 78 (2d Cir.1988). An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against him or her. See United States v. Alfonso, 143 F.3d 772, 776 (2d Cir.1998). Here, the indictment charges Defendants with operating a money transmitting business in violation of section 1960. Thus, Defendants are fairly informed that any money transmitting, including that done on behalf of licensees and that done for its own clients, that occurred in the specified time periods is covered by the indictment.

On February 22, 1999, Defendants filed a motion to dismiss the indictment and to suppress statements made by Velastegui to agents upon his arrest. Defendants argued that prosecution under 18 U.S.C. § 1960 violates their due process rights because the transmittal of funds directly to beneficiaries in Mexico was not a reasonably clear violation of the statute. The district court granted Defendants' motion to dismiss counts one and two pursuant to the rule of lenity and denied Defendants' motion to dismiss count three and its motion to suppress Valestegui's statements. This appeal by the government followed.

### DISCUSSION

■■■■ Because a motion to dismiss on grounds that a criminal statute provides insufficient notice raises a question of law, we review the dismissal of the indictment by the district court *de novo*. *See Alfonso*, 143 F.3d at 775. Due process requires that a criminal statute "give fair warning of the conduct that it makes a crime." *Bouie v. City of Columbia*, 378 U.S. 347, 350–51, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). The rule of lenity, a manifestation of the fair warning requirement, "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). The touchstone inquiry is "whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Id.* at 267, 117 S.Ct. 1219. The rule "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17, 115 S.Ct. 382, 130 L.Ed.2d 225 (1994). If we find that the ambit of the criminal statute is ambiguous, the ambiguity should be resolved in favor of lenity. *See Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971). Therefore, we must decide whether Defendants' conduct—the direct transmission of money to Mexico by an unlicensed agent of a state-licensed money transmitting business—falls clearly within the range of criminal liability under section 1960.

Title 18 U.S.C. § 1960 was enacted in order to combat the growing use of money transmitting businesses to transfer large amounts of the monetary proceeds of unlawful enterprises. *See* S.Rep. No. 101–460, at 14 (1990), reprinted in 1990 U.S.C.C.A.N. 6645, 6658–59. The statute provides, in pertinent part:

> (a) Whoever conducts, controls, manages, supervises, directs, or owns all or part of a business, knowing the business is an illegal money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.
>
> (b) As used in this section—
>
>> (1) the term "illegal money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
>>
>>> (A) is intentionally operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law; or
>>>
>>> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section. . . .

18 U.S.C. § 1960. The statute makes it a federal crime to knowingly operate a money transmitting business in violation of state law where the state requires a license and makes unlicensed money transmitting punishable as a misdemeanor or felony. Therefore, we must look to New York law to determine whether Defendants were operating an illegal money transmitting business.

New York state law provides that it is illegal to receive money for transmission, or to transmit money, without a license issued by the Superintendent of Banks (the "Superintendent").[3] *See* N.Y. Banking Law § 641 (McKinney 1999) ("[N]o person shall engage in the business of ... receiving money for transmission or transmitting the same, without a license therefor obtained from the superintendent as provided in this article...."). The law imposes a misdemeanor penalty on whoever "violates or participates in the violation of any provisions of this article." *Id.* § 650(1) (McKinney 1971). A violation is elevated to a felony if the business knowingly received or transmitted a total of $10,000 or more in a single transaction, a total of $25,000 or more in a period of 30 days or less, or a total of $250,000 in a period of one year or less. *See id.* § 650(2)(b)(1) (McKinney 1999). A violation is a misdemeanor if the business knowingly received or transmitted lesser amounts. *See id.* § 650(2)(a).

Under New York law, a licensed money transmitting business may conduct limited aspects of its business through agents or subagents that it designates, *see id.* § 648(a) (McKinney 1971), who are not themselves required to be licensed, except in certain limited circumstances not applicable here, *see id.* § 648(b), (c). Although agents are not required to be licensed, section 651-a narrowly circumscribes the activities which an unlicensed agent may lawfully perform. This section provides that an agent must remit all money it receives on behalf of a licensed transmitter to that licensed transmitter, either directly or by depositing it into a bank account established for such remittances in the name of the licensed transmitter. *See id.* § 651-a (McKinney 1999). The Superintendent's regulations enacted pursuant to New York banking law underscore the limited money transmitting activities of an agent. Rule 406.3(e) requires "[e]very li-

censee which has appointed or designated agents ... [to] require each agent under its written agency contract to conduct the authorized money transmission activities through the licensee." N.Y. Comp.Codes R. & Regs. tit. 3, § 406.3(e) (1995). Rule 406.5(a)(6) mandates that all agency contracts provide:

> that agents and subagents ... are under a duty to act only as authorized under the agency contract and that an agent and subagent who exceeds its authority is subject to cancellation of the agency contract and may result in further disciplinary action against the licensee by the superintendent.

*Id.* § 406.5(a)(6). Accordingly, although agents of licensed money transmitting businesses need not be licensed in and of themselves, unlicensed agents are explicitly prohibited by state law from transmitting money directly.

■ New York law, therefore, makes the operation of an unlicensed money transmitting business either a misdemeanor or a felony, which in turn subjects the offender to federal criminal penalties under 18 U.S.C. § 1960. It is Defendants' contention, however, that their conduct amounts to a failure to remit money and, although admittedly a violation of their agency agreements and a misdemeanor under state law, this failure to remit does not reasonably constitute the operation of an "illegal money transmitting business" as contemplated by section 1960. We disagree with that conclusion.

Our analysis begins with the language of the statute. *See Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, ——, 119 S.Ct. 755, 760, 142 L.Ed.2d 881 (1999) ("in any case of statutory construction, our analysis begins with the 'language of the statute'" (quoting *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992))). Section

---

**3.** The Superintendent heads the New York State Banking Department, which is charged with implementation of all banking laws in

the state. *See* N.Y. Banking Law §§ 11–12 (McKinney 1990).

1960 applies categorically to "*[w]hoever*" knowingly conducts an illegal money transmitting business. 18 U.S.C. § 1960(a) (emphasis added). An "illegal money transmitting business" is defined, without exception, as a money transmitting business that is not licensed under state law in a state where a license is required. *See id.* § 1960(b)(1)(A). There is nothing on the face of section 1960 that permits any exception for an unlicensed money transmitting business that is also an agent of a state licensee. By its plain language, section 1960 applies to Defendants because GMJ was transmitting money directly without a license.

In fashioning an exception under section 1960 for agents of licensed transmitters, the district court reasoned that because the direct transmission of funds led to the suspension of GMJ's agency agreements, the direct transmission of funds could not have amounted to operating a money transmitting business without an appropriate license. In so doing, the district court assumed that under New York law an agency agreement is the "functional equivalent" of a state license and therefore permits an agent to lawfully engage in money transmitting transactions. This reasoning does not comport with New York's statutory framework.

Section 641 provides that "no person shall engage in the business ... of receiving money for transmission or transmitting the same, without a license ... nor shall any person engage in such business as an agent, except as an agent of a licensee...." N.Y. Banking Law § 641(1).

Furthermore, although state licensees may utilize unlicensed agents in limited aspects of their business, agents are explicitly not permitted to transmit money directly under New York law. *See id.* § 651–a. Hence, an agency agreement with a licensed money transmitting business is *not* the functional equivalent of a state-issued license. Because an agency agreement with a licensed principal is not the same as a money transmitting license, Defendants were operating a money transmitting business without a license.

It is inconsequential that Defendants' direct transmission of money was also a breach of its agency agreements. Defendants' conduct should not be viewed through a myopic lens and characterized solely as a failure to remit money to its principals. There is no reason why Defendants' conduct cannot be viewed both as a failure to remit money to its licensees *and* as direct money transmitting. Therefore, we conclude that a New York agent of a licensee who transmits money directly to a foreign country in contravention of New York state law and its agency agreement is operating a money transmitting business without a license as prohibited by section 1960.[4] Accordingly, section 1960 applies with sufficient clarity to comport with the constitutional fair notice requirement.

Defendants seek support for their agency argument in the Superintendent's regulations that provide that an agent acting outside of the scope of its agreement subjects itself to the cancellation of its agency contract and its *principal* to further action by the Superintendent. *See* N.Y. Comp.

---

4. Our holding does not mean that an agent could face federal criminal prosecution for innocent conduct in mistakenly transmitting money that it had received on behalf of a licensed principal, or for an isolated instance of improper transmittal of money. First, section 1960(a) requires that the unlicensed entity be "an illegal money transmitting *business*" (emphasis added) which insures that persons or entities cannot be prosecuted for a single, isolated transmission of money. Second, section 1960 defines an "illegal money transmitting business" as one "*intentionally*

operated without an appropriate money transmitting license" (emphasis added), and requires that the defendant know the business is an "illegal money transmitting business." Whether or not this defense is available to Defendants here must be determined after factual development at trial and is not properly considered on an appeal of an order dismissing an indictment. *See Alfonso,* 143 F.3d at 777 (holding that "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

Codes R. & Regs. tit. 3, § 406.5(a)(6) (1995). They also point to a letter issued by the Superintendent in September of 1998 warning that the direct transmission of money by agents may result in the revocation of the principal's license, the imposition of fines, and a referral to the appropriate prosecutorial agency for criminal investigation. Defendants contend that one must infer from the regulation and letter that only the licensee is subject to prosecution when its unlicensed agent transmits money directly. This argument is unavailing.

The regulation does not address or purport to address the question of whether an unlicensed agent commits a crime. Indeed, the language of the regulation simply underscores that agents lack authority under state law to transmit money directly because it provides that an agent "who exceeds its authority is subject to cancellation of the agency contract and may result in further disciplinary action against the licensee by the superintendent." N.Y. Comp.Codes R. & Regs. tit. 3, § 406.5(a)(6) (1995). We reject the reasoning that simply because a regulation issued by the Superintendent, who is not responsible for criminal investigations or prosecution, warns only against disciplinary action for the licensee, criminal prosecution of the agent is foreclosed. Furthermore, in support of the Government's motion for reconsideration, the Secretary submitted a letter in which the Secretary opined that an agent who transmits money directly without a state license violates New York Banking law. Thus, the regulation and the September 1998 letter do not override the plain language of section 651–a that makes transmitting money directly by an unlicensed agent of a licensed principal unlawful.

■ The conclusion that Defendants were transmitting money without an appropriate money transmitting license as required for a conviction under section 1960 is especially appropriate on these facts. In support of its motion for reconsideration, the Government proffered that the evidence would show at trial that Defendants were not transmitting money on behalf of any entity with whom they had an agency agreement and did not share any of the commissions from these transactions with the principals. Instead, Defendants were operating a money transmitting business quite separate and apart from the licensed principals with whom they had agency agreements. To hold that section 1960 does not apply to Defendants' conduct in this case would create a loophole in section 1960 whereby a business, simply by having a single agency agreement with a licensed money transmitter, could transmit money on its own without a state license and avoid prosecution under federal law.

### CONCLUSION

The direct transmission of funds in violation of New York state law by an agent of a licensed money transmitter falls within the ambit of conduct forbidden by section 1960. Because section 1960 therefore applies with sufficient clarity to Defendants' conduct, we reverse the district court and reinstate counts one and two of the indictment.