**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellant,*

            v.

FARHAD TALEBNEJAD, a/k/a Fran T.
Nejad, a/k/a Fran T. Nejad Shirazi,
a/k/a Farhad Talebnehad Shirazi;
FATAMEH TALEBNEJAD, a/k/a Fatemeh
Talebnejad, a/k/a Fatameh
Talebnejao; ABDOLRAHMAN
TALEBNEJAD, a/k/a Abdol Rahman
Talebnejad, a/k/a Abdol Talebnejad,
a/k/a Abdol R. Talebnejad,
                    *Defendants-Appellees,*

            and

FOAD TALEBNEJAD, a/k/a Foad
Talebnejad Shirazi, a/k/a Foad
Shirazi,
                    *Defendant.*

No. 04-4841

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

FARHAD TALEBNEJAD, a/k/a Fran T.
Nejad, a/k/a Fran T. Nejad Shirazi,
a/k/a Farhad Talebnehad Shirazi;
FATAMEH TALEBNEJAD, a/k/a Fatemeh
Talebnejad, a/k/a Fatameh
Talebnejao; ABDOLRAHMAN
TALEBNEJAD, a/k/a Abdol Rahman
Talebnejad, a/k/a Abdol Talebnejad,
a/k/a Abdol R. Talebnejad,
          *Defendants-Appellants,*

          and

FOAD TALEBNEJAD, a/k/a Foad
Talebnejad Shirazi, a/k/a Foad
Shirazi,
          *Defendant.*

No. 04-4873

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CR-03-517-PJM)

Argued: May 25, 2006

Decided: August 21, 2006

Before WILKINS, Chief Judge, GREGORY, Circuit Judge, and
Joseph F. ANDERSON, Jr., Chief United States District Judge
for the District of South Carolina, sitting by designation.

Reversed in part, dismissed in part, and remanded by published opinion. Chief Judge Wilkins wrote the majority opinion, in which Judge

Anderson joined. Judge Gregory wrote an opinion concurring in part and dissenting in part.

---

**COUNSEL**

**ARGUED:** David Ira Salem, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellant/Cross-Appellee. Dale Preston Kelberman, MILES & STOCKBRIDGE, P.C., Baltimore, Maryland, for Appellees/Cross-Appellants. **ON BRIEF:** Allen F. Loucks, United States Attorney, Chan Park, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellant/Cross-Appellee. Todd M. Reinecker, MILES & STOCK-BRIDGE, P.C., Baltimore, Maryland, for Appellee/Cross-Appellant Fatameh Talebnejad; Christopher B. Mead, LONDON & MEAD, Washington, D.C., for Appellee/Cross-Appellant Farhad Talebnejad; Timothy J. Sullivan, College Park, Maryland, for Appellee/Cross-Appellant Abdolrahman Talebnejad.

---

**OPINION**

WILKINS, Chief Judge:

The United States appeals an order of the district court dismissing the indictment against Farhad Talebnejad and his parents (collectively, "the Talebnejads"). The Talebnejads were charged with conducting an unlicensed money transmitting business, *see* 18 U.S.C.A. § 1960 (West Supp. 2006). The district court dismissed the indictment on the basis that its allegations were insufficient in numerous respects. *See United States v. Talebnejad*, 342 F. Supp. 2d 346, 353-61 (D. Md. 2004). The court declined to address the Talebnejads' Eighth Amendment challenge to the forfeiture allegations of the indictment on the basis that the claim was premature. *See id.* at 361. For the reasons set forth below, we reverse the dismissal of the indictment and dismiss the Talebnejads' cross-appeal of the refusal to consider the Eighth Amendment claim.

## I.

### A. *Relevant Provisions*

#### 1. *18 U.S.C.A. § 1960*

A money transmitting business is one that, for a fee, accepts currency for transfer within or outside the United States through foreign currency exchanges and financial institutions. *See* 18 U.S.C.A. § 1960(b)(2); *United States v. Velastegui*, 199 F.3d 590, 592 (2d Cir. 1999). Many of these businesses are operated informally, by immigrants for fellow immigrants from their home countries. In 1992, Congress sought "to combat the growing use of money transmitting businesses to transfer large amounts of the monetary proceeds of unlawful enterprises" by enacting § 1960. *Velastegui*, 199 F.3d at 593. Prior to 2001, the statute provided, in pertinent part:

> (a) Whoever conducts, controls, manages, supervises, directs, or owns all or part of a business, *knowing the business is an illegal money transmitting business*, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

> (b) As used in this section—

> > (1) the term "illegal money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

> > > (A) is *intentionally operated without an appropriate money transmitting license* in a State where such operation is punishable as a misdemeanor or a felony under State law; or

> > > (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section . . . .

18 U.S.C.A. § 1960, historical & statutory notes (West Supp. 2006) (emphasis added) (internal quotation marks omitted).

On October 26, 2001, Congress amended the statute to provide, in relevant part, as follows:

> (a)  *Whoever knowingly conducts*, controls, manages, supervises, directs, or owns all or part of *an unlicensed money transmitting business*, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.
>
> (b)   As used in this section—
>
> > (1)   the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—
> >
> > > (A)  is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, *whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable*; [or]
> > >
> > > (B)   fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section . . . .

18 U.S.C.A. § 1960 (emphasis added). The purpose of the amendment was to eliminate a potentially available affirmative defense that the defendant was unaware of applicable state licensing requirements. *See* H.R. Rep. No. 107-250, pt. I, at 54 (2001) (explaining that the amendment "clarifies the scienter requirement in § 1960 to avoid the problems that occurred when the Supreme Court interpreted the currency transaction reporting statutes to require proof that the defendant knew that structuring a cash transaction to avoid the reporting requirements

had been made a criminal offense. *See Ratzlaf v. United States*, [510 U.S. 135,] 114 S. Ct. 655 (1994). The proposal makes clear that an offense under § 1960 is a general intent crime for which a defendant is liable if he knowingly operates an unlicensed money transmitting business.").

## 2. *Maryland Law*

Maryland law prohibits a person from engaging in "the business of money transmission" unless that person is a licensee, is a delegate of a licensee, or is exempt from the licensing requirement. Md. Code Ann., Fin. Inst. § 12-405 (LexisNexis 2003). "Money transmission" is defined as "the business of selling or issuing payment instruments or stored value devices, or receiving money or monetary value, for transmission to a location within or outside the United States" and includes "[a]ny informal money transfer system engaged in as a business for . . . facilitating the transfer of money outside the conventional financial institutions system to a location within or outside the United States." Md. Code Ann., Fin. Inst. § 12-401(*l*) (LexisNexis 2003). Maryland law sets forth criminal penalties for "[a]ny person who *knowingly and willfully* violates" the licensing requirement. Md. Code Ann., Fin. Inst. § 12-430 (LexisNexis 2003) (emphasis added).

## 3. *Federal Regulations*

Although § 1960 has made failure to comply with federal registration requirements punishable since 1994, *see* 18 U.S.C.A. § 1960, historical & statutory notes (West 2000), pertinent regulations were not promulgated until 1999 and did not become effective until December 31, 2001. The actual content of applicable federal regulations is not pertinent to the issues before us.

## B. *The Talebnejads*

The Talebnejads are Iranian immigrants. Farhad Talebnejad operated two money transmitting businesses—Shirazi Money Exchange, Inc., and Shirazi Arz, Inc.—out of his parents' home in Rockville, Maryland. The businesses were not licensed under Maryland law, nor were they registered pursuant to 31 U.S.C.A. § 5330 (West 2003). In

late 1995, Talebnejad investigated the possibility of obtaining licenses, but decided not to do so because he could not afford the cost and he believed that the licensing statute did not apply to his businesses.

In November 2003, the Talebnejads were charged with one count of conspiring to conduct an unlicensed money transmitting business and with two substantive counts of conducting an unlicensed money transmitting business.[1] All three counts alleged that the businesses were "unlicensed" within the meaning of § 1960(a) because (1) the businesses were required to be licensed under Maryland law, and were not, in violation of § 1960(b)(1)(A); and (2) the businesses were required to be registered with the federal government, and were not, in violation of § 1960(b)(1)(B).[2] The indictment also sought forfeiture of approximately $18 million in property traceable to the charged offenses.

The Talebnejads moved to dismiss the indictment, asserting that (1) § 1960(b)(1)(A) violated the Equal Protection Clause because not all states require money transmitting businesses to be licensed; (2) § 1960(b)(1)(A) violated the Due Process Clause because it lacked a scienter requirement as to the applicability of state licensing laws; (3) § 1960(b)(1)(A) was unconstitutionally vague in several respects; and (4) the indictment failed to adequately inform the Talebnejads of the offenses charged.

The district court granted the motion.[3] With respect to the due process challenge to the lack of a scienter requirement in § 1960(b)(1)(A), the court recognized that "Congress attempted to exclude any *mens rea* requirement when it amended § (b)(1)(A)."

---

[1]One other family member was also charged, but the charges against him were subsequently dismissed.

[2]For purposes of this appeal, we accept the Government's contention that § 1960 sets forth one offense—conducting an unlicensed money transmitting business—that may be committed in multiple ways. For ease of reference, however, we will refer to the definitions of "unlicensed" in § 1960(b)(1)(A) and (B) as independent violations of § 1960.

[3]The court rejected the Talebnejads' equal protection claim, *see Talebnejad*, 342 F. Supp. 2d at 350-53, a ruling they do not challenge.

*Talebnejad*, 342 F. Supp. 2d at 353. But, the court observed, § 1960(b)(1)(A) "still refers to the operation of such a business where such operation is punishable as a misdemeanor or felony under State law." *Id.* (internal quotation marks omitted). The court concluded that "the plain meaning of these words is that unless the lack of a license is 'punishable' under state law, it is not a federal crime at all," and that the Government therefore was required to allege and prove an actual violation of state law in order to prove a violation of § 1960. *Id.* at 354-55. Because the indictment did not allege that Talebnejad had "knowingly and willfully" failed to obtain a license, Md. Code Ann., Fin. Inst. § 12-430, the court ruled it was deficient, *see Talebnejad*, 342 F. Supp. 2d at 355. The district court acknowledged the potential conflict between its analysis of the statute and the expressed intent of Congress to omit any scienter requirement with respect to state licensing obligations, but purported to avoid this conflict by declaring that portion of § 1960 "merely inoperative" in states that have identified a *mens rea* for violation of licensing requirements. *Id.*

Although the Talebnejads did not challenge the constitutionality of § 1960(b)(1)(B), the district court nevertheless considered that provision as well. *See id.* at 355-56. Noting that Congress had not "clearly expressed" its intent to exclude a *mens rea* from a violation of § 1960(b)(1)(B), the court ruled that the Government could obtain a conviction under that provision only by "alleg[ing] and prov[ing] that the Defendant acted knowing that he had an obligation to register and that he willfully failed to do so." *Id.* at 356.

II.

We first consider the Talebnejads' claims regarding the § 1960(b)(1)(A) charge.

A. *Due Process Challenge*

As noted above, § 1960(b)(1)(A) provides that it is a federal offense to (1) operate a money transmitting business, (2) that affects interstate commerce, and (3) that is unlicensed under state law, when (4) state law requires a license and (5) state law punishes lack of a license as a felony or misdemeanor. *See* 18 U.S.C.A. § 1960(b)(1)(A). The parties agree that the Government must allege and prove the

defendant's knowledge with respect to the first three elements and that Congress explicitly excluded any *mens rea* requirement from the last two elements. The question, therefore, is whether the statute is constitutional in the absence of a *mens rea* requirement as to these two elements.

The definition of federal criminal offenses lies within the province of Congress. *See Liparota v. United States*, 471 U.S. 419, 424 (1985). There is no question that, at least under some circumstances, Congress may dispense with a *mens rea* element, *see Staples v. United States*, 511 U.S. 600, 606 (1994), as it has clearly done with respect to § 1960(b)(1)(A). The clear language of § 1960(b)(1)(A) requires us to reject the attempt of the district court to avoid the constitutional question through statutory construction, *i.e.*, by incorporating the Maryland intent requirement into the federal statute and declaring Congress' language regarding intent to be surplusage. *See Talebnejad*, 342 F. Supp. 2d at 353-55; *see also* Md. Code Ann., Fin. Inst. § 12-430 (setting forth criminal penalties for "knowingly and willfully violat[ing]" the licensing requirement). First, the principle that a statute should be construed so as to avoid a grave constitutional question —as the district court evidently sought to do—"has no application" when, as here, the statute is unambiguous. *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 494 (2001). Second, "[a] well-recognized canon of construction requires courts to read statutory provisions so that, when possible, no part of the statute is superfluous." *United States v. Childress*, 104 F.3d 47, 52 (4th Cir. 1996). In light of these principles, the district court was obliged to give effect to Congress' clearly expressed intent that *no mens rea*—whether derived from § 1960 itself or from an underlying state statute—was to attach to the latter two elements of a § 1960(b)(1)(A) offense.[4]

The essence of the Talebnejads' due process challenge to § 1960(b)(1)(A) is that Congress exceeded constitutional bounds when it declared that ignorance of state licensing requirements is not

---

[4]The partial dissent argues that in amending § 1960(b)(1)(A) in 2001, Congress nullified only the *federal* specific intent requirement, leaving intact any applicable *state* specific intent requirement. Even if this was Congress' intent, the statutory language simply does not allow such a distinction.

a defense to liability under the federal statute. For the reasons set forth below, however, we agree with the Government that § 1960(b)(1)(A) passes constitutional muster because it "requires . . . defendants to know the facts that make their conduct illegal," Appellant's Br. at 27, and omits a knowledge requirement only as to legal obligations.

The Supreme Court has indicated that there are limits to the authority of Congress to omit a *mens rea* requirement as to one or more elements of an offense. For example, in *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994), the Court considered the proper construction of a federal statute prohibiting the knowing interstate transportation of a visual depiction of a minor engaged in sexually explicit conduct. *See X-Citement Video*, 513 U.S. at 65-66. The Supreme Court rejected the Government's argument that the defendant could be convicted without knowing that the person depicted was a minor, reasoning in part that such a reading of the statute was constitutionally problematic because the presence of a minor in the video made the difference between conduct that was *constitutionally protected* (possession of pornography) and conduct that was not (possession of obscenity). *See id.* at 72-73, 78. Similarly, *Staples* involved the question of whether a statute that prohibited receipt or possession of an unregistered firearm should be construed so as to include a *mens rea* with respect to the facts that brought a particular weapon within the limited, statutory definition of "firearm." *See Staples*, 511 U.S. at 603-04. Citing the "long tradition of widespread lawful gun ownership by private individuals in this country," *id.* at 610, the Court concluded that an individual could be convicted under the statute only if the factfinder determined that the defendant knew of the factual characteristics that brought the weapon within the statutory definition, *see id.* at 619.

Justice Ginsburg, concurring in the judgment in *Staples*, was careful to note that the presumption that a *mens rea* attaches to the elements of the offense "requires knowledge only of the facts that make the defendant's conduct illegal, lest it conflict with the related presumption, deeply rooted in the American legal system, that, ordinarily, ignorance of the law or a mistake of law is no defense to criminal prosecution." *Staples*, 511 U.S. at 622 n.3 (Ginsburg, J., concurring in the judgment) (internal quotation marks omitted). It is here that the

Talebnejads' challenge to § 1960(b)(1)(A) founders.[5] Both *X-Citement Video* and *Staples* concerned whether due process required the inclusion of a *mens rea* as to a *factual* element of a crime, not a legal element. *Accord Bryan v. United States*, 524 U.S. 184, 192 (1998) ("[T]he knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law." (internal quotation marks omitted)). Here, the Talebnejads claim that due process requires the Government to prove that they knew that their operation of an unlicensed money transmitting business violated state law.

The Supreme Court has recognized a "mistake of law" defense in only one case. In *Lambert v. California*, 355 U.S. 225 (1957), the Supreme Court considered the constitutionality of a municipal ordinance that required a convicted felon to register with the city, and subjected the felon to criminal penalties even if he or she was unaware of the registration requirement, *see id.* at 226-27. The Court held that the Due Process Clause "places some limits on [the] exercise" of the rule that ignorance of the law is no excuse, and concluded that the ordinance exceeded those limits. *Id.* at 228. The key to the ruling of the Court was its characterization of the conduct at issue as "wholly passive," in that violation of the ordinance was "unaccompanied by any activity whatever, mere presence in the city being the test." *Id.* at 228-29. The same cannot be said of the licensing requirement of § 1960(b)(1)(A), which reaches the unquestionably active conduct of operating a business.

---

[5]We agree with the Talebnejads that § 1960(b)(1)(A) is not a strict liability offense. This fact does not help them, however.

A strict liability or "public welfare" offense is one in which no *mens rea* is attached to a factual element of a crime, such that a defendant cannot escape criminal liability on the basis of a mistake of fact. *See, e.g.*, *United States v. Freed*, 401 U.S. 601, 607, 609 (1971) (holding that a conviction for possession of an unregistered hand grenade did not require knowledge that the hand grenade was unregistered; characterizing the statute as "a regulatory measure in the interest of the public safety, which may well be premised on the theory that one would hardly be surprised to learn that possession of hand grenades is not an innocent act"). As explained in the text, however, § 1960(b)(1)(A) is a general intent crime, as to which the *mens rea* of "knowledge" attaches to all factual elements of the offense.

*Liparota*, on which the Talebnejads rely, is of no help to them.[6] There, the Supreme Court considered the *mens rea* necessary to convict the defendant of unauthorized acquisition of food stamps. Noting the many innocent circumstances under which an individual might acquire or use food stamps without authorization (for example, by being the recipient of a mistaken mailing), *see Liparota*, 471 U.S. at 426-27, the Court held that the Government was required to demonstrate that the defendant knew that his acquisition of the food stamps was unauthorized, *see id.* at 425. *Liparota* does not aid the Talebnejads' due process challenge because *Liparota* concerned only a question of statutory construction; once the Supreme Court construed the statute to require knowledge of the lack of authorization for conviction, it had no occasion to consider whether the absence of a knowledge requirement would violate due process.

In summary, we conclude—consistent with an unbroken line of Supreme Court precedent—that § 1960(b)(1)(A) requires a *mens rea* of knowledge only as to the factual elements of the offense. The Due Process Clause did not require Congress to include a *mens rea* as to the legal elements of the crime, and we reject the Talebnejads' argument to the contrary.

## B.   *Other Challenges*

The district court also ruled the indictment deficient because it failed to address the effect of an amendment to Maryland law and because it did not allege that the Talebnejads had a duty under Maryland law to obtain a license. We address these issues below.

---

[6]Nor is *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). In *Arthur Andersen*, a unanimous court held that a federal statute that prohibited "knowingly . . . corruptly persuad[ing]" an individual to withhold or alter documents relevant to an official proceeding required proof that the defendant was conscious of wrongdoing. *Id.* at 705-06. This conclusion was not based on due process concerns, however, but rather on the statutory language. *See id.* at 706 ("Only persons conscious of wrongdoing can be said to knowingly corruptly persuade." (alterations & internal quotation marks omitted)).

1.

The Maryland money transmitting statute was amended effective October 1, 2002, to make changes to the definition of "money transmission." Without addressing the materiality of these amendments, the district court concluded that "the pre-October 1, 2002 definitions must be satisfied with respect to pre-October 1, 2002 activities and the post-October 1, 2002 definitions satisfied as to the post October 1, 2002 activities." *Talebnejad*, 342 F. Supp. 2d at 358.

We agree with the district court that if the amendment of Maryland law broadened the definition of "money transmission"—and thus, broadened the applicability of the licensing requirement—prosecuting pre-October 1, 2002 conduct under the post-October 1, 2002 statute would violate the Ex Post Facto Clause. In other words, if business activity "A" was not required to be licensed prior to October 1, 2002 —and thus it was not a violation of federal law to engage in the activity without a state license—it would be a violation of the Ex Post Facto Clause to prosecute that conduct on the basis that it required a license *after* the October 1, 2002 amendment. *See Weaver v. Graham*, 450 U.S. 24, 28 (1981) (defining an ex post facto law as "any law which imposes a punishment for an act which was not punishable at the time it was committed" (internal quotation marks omitted)).

We conclude, however, that dismissal of the indictment is not required simply because Maryland law was amended during the time frame of the offense that is alleged in the indictment. An indictment meets the requirements of the Fifth and Sixth Amendments "if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required." *United States v. Kimberlin*, 18 F.3d 1156, 1159 (4th Cir. 1994) (internal quotation marks omitted). Here, the indictment alleges that the Talebnejads operated an unlicensed money transmitting business, in violation of § 1960(b)(1)(A), "[b]eginning no earlier than October 26, 2001 and continuing to in or about December 2002." J.A. 25. The offense is proved if, at any time during the period alleged by

the indictment, the Talebnejads' business was subject to the Maryland licensing requirement.[7] Although the case may be made more difficult (for both parties) by the necessity of addressing two versions of the state licensing requirement, the burden on the Talebnejads is not so great as to amount to a violation of due process.[8]

2.

The district court also concluded that the indictment was defective because it did not allege that the Talebnejads had a duty to acquire a license under Maryland law. *See Talebnejad*, 342 F. Supp. 2d at 359. The court reasoned that unless the Government was required to allege and prove a duty to obtain a license, "any number of individuals affiliated with an unlicensed money transmitting business could be punished under § 1960." *Id.* This simply is not an accurate reading of the statute. Section 1960(b)(1)(A) applies only to one who "conducts, controls, manages, supervises, directs, or owns" a money transmitting business, knowing that it is not licensed, 18 U.S.C.A. § 1960(a). Criminal liability is thus clearly directed toward those who are, in some substantial degree, in charge of the operation; the statute does not reach mere employees. We therefore reject the conclusion of the district court that the Government is required to allege and prove a state-law duty to acquire a license in order to obtain a conviction under § 1960(b)(1)(A).

III.

The district court also concluded that the indictment was lacking

---

[7]The same is true with respect to the allegation that the Talebnejads violated § 1960(b)(1)(B) by failing to register their business pursuant to regulations that did not become effective until December 31, 2001.

[8]As the district court noted, *see Talebnejad*, 342 F. Supp. 2d at 358, Count One of the second superseding indictment alleges a conspiracy to violate § 1960(b)(1)(A) that began in December 2000, well before the statute was amended to omit a scienter requirement. This is not an ex post facto violation; at most, it presents a question for the jury as to whether the conspiracy continued after the amendment of § 1960(b)(1)(A). *See United States v. Julian*, 427 F.3d 471, 482 (7th Cir. 2005), *cert. denied*, 126 S. Ct. 1444 (2006).

with respect to the charge that the Talebnejads violated § 1960(b)(1)(B), which defines an "unlicensed money transmitting business" as one that "fails to comply with the money transmitting business registration requirements" of 31 U.S.C.A. § 5330 and related regulations. With respect to this provision, the district court concluded that the Government was required "to allege and prove that the Defendant acted knowing that he had an obligation to register and that he wilfully failed to do so." *Talebnejad*, 342 F. Supp. 2d at 356. It based this conclusion on "Congress's failure to amend . . . § (b)(1)(B) when it amended § (b)(1)(A)" and on "[t]he conventional understanding . . . that *mens rea* is a fundamental component of every criminal act." *Id.*

We cannot accept the reasoning of the district court. Section 1960, as currently written, applies to whoever "knowingly conducts . . . an unlicensed money transmitting business," 18 U.S.C.A. § 1960(a), and defines "unlicensed money transmitting business," in relevant part, as "a money transmitting business which affects interstate or foreign commerce . . . and . . . fails to comply with the money transmitting business registration requirements" set forth in 31 U.S.C.A. § 5330 or accompanying regulations, 18 U.S.C.A. § 1960(b)(1)(B). There is no question here that the Government must prove the Talebnejads' knowledge as to all of the *factual* elements of the crime: that they were conducting a money transmitting business that affected interstate commerce and that was unregistered. Therefore, § 1960(b)(1)(B) sets forth a constitutionally valid general intent crime, just as § 1960(b)(1)(A) does. *See Bryan*, 524 U.S. at 192. Nothing in the statutory language—such as the use of the word "willful"—suggests that the Government must additionally prove knowledge of the law. Further, it is not relevant that Congress made no change to § 1960(b)(1)(B) when it amended § 1960(b)(1)(A); there has never been a question as to whether a conviction under § 1960(b)(1)(B) required proof of the defendant's knowledge of the law.[9] *See United States v. Uddin*, 365 F. Supp. 2d 825, 829 (E.D. Mich. 2005).

---

[9]We note that § 1960(b)(1)(B) bears grammatical resemblance to the statute at issue in *Liparota*, discussed *supra*, as to which the Supreme Court concluded that "[a]bsent indication of contrary purpose in the language or legislative history of the statute," the statutory language "re-

IV.

The Talebnejads cross-appeal the portion of the district court order that declined to address their challenge to the forfeiture allegations of the indictment. The Talebnejads maintain that the $18 million forfeiture sought by the Government violates the Excessive Fines Clause of the Eighth Amendment. We agree with the district court that this challenge is not yet ripe. *Accord United States v. Covey*, 232 F.3d 641, 646 (8th Cir. 2000) ("We do not have jurisdiction [over an appeal of a preliminary forfeiture order] when no final forfeiture order or judgment has been entered . . . ."). Accordingly, we dismiss the Talebnejads' cross-appeal.

V.

For the reasons set forth above, we reverse the dismissal of the indictment and remand for further proceedings. The Talebnejads' cross-appeal is dismissed.

*REVERSED IN PART, DISMISSED IN PART,*
*AND REMANDED*

GREGORY, Circuit Judge, concurring in part and dissenting in part:

Today, we must examine the meaning and constitutionality of 18 U.S.C. § 1960, the federal criminal statute prohibiting unlicensed money transmitting businesses. Having considered the issues presented, I cannot join the majority in two respects. First, I believe that the indictment in this case is defective because it omits the scienter requirements necessary for a conviction under § 1960(b)(1)(A). I therefore respectfully dissent from the majority's decision to reverse

---

quire[d] a showing that the defendant knew his conduct to be unauthorized." *Liparota*, 471 U.S. at 425. With respect to § 1960, in contrast, there is relevant legislative history in the form of Congress' statement that it desired § 1960(b)(1)(A) to be a general intent crime. In light of this clear expression of congressional purpose with respect to § 1960(b)(1)(A), it would be unreasonable to conclude that Congress intended a *greater mens rea* for § 1960(b)(1)(B).

the dismissal of the indictment. Second, although I agree that § 1960(b)(1)(A) and (B) are not facially unconstitutional, I write separately to express my concern that these provisions could raise substantial due process questions in some circumstances.

I.

As the majority notes, the Talebnejads are alleged to have violated § 1960 by operating an "unlicensed money transmitting business," as that term is defined in both § 1960(b)(1)(A) and (B). The first issue before us is the proper construction of the scienter required for § 1960(b)(1)(A), which criminalizes a violation of state licensing requirements.[1] We must determine whether, as the district court held, the Government must establish a knowing and willful violation of Maryland's licensing law to convict the Talebnejads. As always, this inquiry begins with an examination of the text of the statute.

Under § 1960, it is a crime to operate "an unlicensed money transmitting business." 18 U.S.C. § 1960(a). Subsection 1960(b)(1)(A) defines an "unlicensed money transmitting business" as a money transmitting business that:

> is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable.

18 U.S.C. § 1960(b)(1)(A). Thus, we must look to the relevant state law to determine whether § 1960(b)(1)(A) has been violated. *See United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) (examining New York law under an earlier version of § 1960).

---

[1]Section 1960(b)(1)(B) instead criminalizes a violation of the federal registration requirements of 31 U.S.C. § 5330 and the regulations prescribed thereunder. I agree with the majority that clear Congressional intent to the contrary precludes us from construing § 1960(b)(1)(B) to contain a *mens rea* element.

During the October 21, 2001 to December 2002 period charged in the indictment, Maryland has required money transmitting businesses to be licensed. *See* Md. Code Ann., Fin. Inst. § 12-405. Up until October 1, 2002, Maryland punished a violation of the licensing requirement as a *misdemeanor*. Md. Code Ann., Fin. Inst. § 12-424 (repealed 2002). On October 1, 2002, however, a new penalty provision replaced the old, making it a *felony* to "*knowingly and willfully*" violate the Maryland licensing requirement. Md. Code Ann., Fin. Inst. § 12-430 (emphasis added).

Despite the knowing and willful scienter elements required by the amended Maryland statute, the majority reasons that due to language added by 2001 amendments to § 1960, this intent need not be established to convict under § 1960(b)(1)(A). The majority concludes that the final phrase of § 1960(b)(1)(A)—"whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable"—obviates the knowing and willful requirements of Maryland law. I cannot agree.

Under the plain language of § 1960(b)(1)(A), a crime is committed only if the operation of the business without a license is "punishable as a misdemeanor or a felony under State law." 18 U.S.C. § 1960(b)(1)(A). Since October 1, 2002, operating a money transmitting business without a Maryland license can be "punished" as a misdemeanor or felony only if the violation was knowing and willful. It necessarily follows that these scienter elements must be established before a defendant's conduct will qualify under § 1960(b)(1)(A) as "punishable as a misdemeanor or a felony under State law." Just as there can be no violation of § 1960(b)(1)(A) where a state does not require a license or does not penalize the lack of a license, there can be no violation of § 1960(b)(1)(A) where the conduct at issue does not satisfy the elements of the state misdemeanor or felony offense.

The last phrase of § 1960(b)(1)(A) does not nullify this express requirement of the law. Rather, this language clarifies how the 2001 amendments to § 1960 changed the scienter requirements of the federal offense. Prior to 2001, a violation of § 1960(b)(1)(A) only occurred if there was an "intentional[ ]" violation of the state licensing law. *See* 18 U.S.C. § 1960 (2000) (amended 2001). Thus, even in states that had no *mens rea* requirement, the federal statute supplied

its own scienter requirement for the *federal* offense. The amended language of § 1960(b)(1)(A) makes clear that federal law no longer supplies an intent requirement; in states that do not require scienter for a misdemeanor or felony conviction, scienter is not necessary for a § 1960(b)(1)(A) conviction. The last phrase of the statute simply does not speak to the situation here, where it is state law that requires *mens rea*.

For these reasons, I would hold that the Government must prove a knowing and willful violation of Maryland's licensing law for conduct occurring after October 1, 2002.[2] As written, the indictment fails to allege a knowing and willful violation of the Maryland licensing law for activities after that date and omits those scienter requirements from its recitation of the Maryland law. *See* J.A. 16 ("since October 1, 2002, it was a felony under Maryland state law, as codified in MD. CODE ANN., Financial Institutions, Title 12, Subtitle 4, Section 12-430, to operate a money transmittal business without such a license."). I would therefore affirm the dismissal of the indictment.

## II.

Also before us is whether § 1960(b)(1)(A) and (B) are constitutionally infirm to the extent that they fail to require a knowing violation of the relevant licensing and registration requirements.[3] The Talebne-

---

[2]Because I believe the obligation to prove a knowing and willful violation of Maryland's licensing law is clear from the plain language of § 1960(b)(1)(A) and the Maryland law it references, I reject the Talebnejads' argument that § 1960(b)(1)(A) is void for vagueness. *See United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) ("The void-for-vagueness doctrine requires that penal statutes define crimes so that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged.") (internal quotation marks omitted). Even if the different scienter requirements made the statute ambiguous, I would reach the same result through applying the rule of lenity. *See United States v. Lanier*, 520 U.S. 259, 266 (1997) (holding that the rule of lenity "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered"). A knowing and willful violation of Maryland's licensing law would be clearly covered by both of the possible interpretations of the provision.

[3]As noted above, I would not find scienter to be required for conduct prior to October 1, 2002 under § 1960(b)(1)(A), and I agree that scienter is not required under § 1960(b)(1)(B).

jads argue that to expose an individual to criminal liability for morally blameless activity (such as operating a money transmitting business), due process requires that the Government prove that the individual knew that he or she was in violation of a law or regulation. Although I join the majority in rejecting this facial constitutional challenge, I write separately to express my concern about the constitutionality of § 1960(b)(1)(A) and (B) in some circumstances.

Although Congress has "wide latitude" to "declare an offense and to exclude elements of knowledge and diligence from its definition," *Lambert v. California*, 355 U.S. 225, 228 (1957), this power is not without constitutional limits. *See United States v. Foley*, 598 F.2d 1323, 1335 (4th Cir. 1979) ("[T]here are undoubtedly due process restrictions on the legislature's power to define certain conduct as criminal absent particular scienter requirements."). In *Lambert*, the Supreme Court squarely confronted these boundaries and held that due process places limits on the application of the principle that "ignorance of the law will not excuse." 355 U.S. at 228. In that case, the ordinance at issue made it a crime for a felon to remain in Los Angeles for more than five days without registering with the police. *Id.* at 226. The Court overturned the defendant's conviction, reasoning that the defendant, who did not know of the registration ordinance, lacked notice that her conduct amounted to a crime, as required by due process. *Id.* at 228. Specifically, nothing about the defendant's passive conduct of being present in Los Angeles after having been convicted of a felony suggested the need to inquire about a registration requirement. *Id.* at 229.

Following the reasoning of *Lambert*, I agree that the two provisions of the present statute are not facially unconstitutional. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (to establish that a statute is unconstitutional on its face, "the challenger must establish that no set of circumstances exists under which the Act would be valid"). The statute here requires that one must "*knowingly conduct[ ], control[ ], manage[ ], supervise[ ], direct[ ], or own[ ]* all or part of an unlicensed money transmitting business" to be convicted. 18 U.S.C. § 1960(a). In many cases, activities such as conducting and controlling a money transmitting business would provide "circumstances which might move one to inquire as to the necessity of [licensing and] registration." *See id.* at 229 (distinguishing the *Lambert* ordinance

from licensing statutes that regulate business activities). That is, the individual's direct and knowing involvement in operating the money transmitting business would usually provide adequate notice that his or her conduct might be regulated by the law.

However, I am concerned that in certain circumstances, the conduct covered by the statute might not provide constitutionally sufficient notice of possible regulation. For example, under the statute, a person who knowingly owns just five percent of a money transmitting business is covered by the prohibition. Such a person would be subject to up to five years' imprisonment for the business's noncompliance with the licensing, registration, or regulatory requirements. In my view, a significant due process question exists regarding whether the individual's conduct would provide notice of a possible crime. Owning a small stake in a business does not require involvement in the business activity. Indeed, it may well be greatly attenuated from the operation of the enterprise. In such a case, minimal ownership resembles the passive conduct proscribed by the flawed *Lambert* ordinance, raising a question as to whether the individual's conduct provides the notice required by due process. No doubt other circumstances could raise similar constitutional doubts, given the breadth of the statute. I would therefore leave open the question of whether certain situations could give rise to a successful as-applied challenge to § 1960(b)(1)(A) or (B).

### III.

For the reasons stated, I would affirm the dismissal of the indictment. Moreover, although I agree that the charged provisions of § 1960 are not facially unconstitutional, I would leave for another day the question of whether § 1960(b)(1)(A) and (B) are unconstitutional in certain circumstances. I concur in the decision to dismiss the Talebnejads' cross-appeal.