GREGORY, Circuit Judge,
concurring in part and dissenting in part.
Today, we must examine the meaning and constitutionality of 18 U.S.C. § 1960, the federal criminal statute prohibiting unlicensed money transmitting businesses. Having considered the issues presented, I cannot join the majority in two respects. First, I believe that the indictment in this case is defective because it omits the scien-ter requirements necessary for a conviction under § 1960(b)(1)(A). I therefore respectfully dissent from the majority’s decision to reverse the'dismissal of the indictment. Second, although I agree that § 1960(b)(1)(A) and (B) are not facially unconstitutional, I write separately to express my concern that these provisions could raise substantial due process questions in some circumstances.
I.
As the majority notes, the Talebnejads are alleged to have violated § 1960 by operating an “unlicensed money transmitting business,” as that term is defined in both § 1960(b)(1)(A) and (B). The fust issue before us is the proper construction of the scienter required for § 1960(b)(1)(A), which criminalizes a violation of state licensing requirements.[1] We must determine whether, as the district court held, the Government must establish a knowing and willful violation of Maryland’s licensing law to convict the Talebne-jads. As always, this inquiry begins with an examination of the text of the statute.
Under § 1960, it is a crime to operate “an unlicensed money transmitting business.” 18 U.S.C. § 1960(a). Subsection 1960(b)(1)(A) defines an “unlicensed money transmitting business” as a money transmitting business that:
is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable.
*574 18 U.S.C. § 1960(b)(1)(A). Thus, we must look to the relevant state law to determine whether § 1960(b)(1)(A) has been violated. See United States v. Velastegui, 199 F.3d 590, 593 (2d Cir.1999) (examining New York law under an earlier version of § 1960).
During the October 21, 2001 to December 2002 period charged in the indictment, Maryland has required money transmitting businesses to be licensed. See Md. Code Ann., Fin. Inst. § 12-405. Up until October 1, 2002, Maryland punished a violation of the licensing requirement as a misdemeanor. Md.Code Ann., Fin. Inst. § 12-424 (repealed 2002). On October 1, 2002, however, a new penalty provision replaced the old, making it a felony to “knowingly and willfully ” violate the Maryland licensing requirement. Md.Code Ann., Fin. Inst. § 12-430 (emphasis added).
Despite the knowing and willful scienter elements required by the amended Maryland statute, the majority reasons that due to language added by 2001 amendments to § 1960, this intent need not be established to convict under § 1960(b)(1)(A). The majority concludes that the final phrase of § 1960(b)(1)(A) — “whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable” — obviates the knowing and willful requirements of Maryland law. I cannot agree.
Under the plain language of § 1960(b)(1)(A), a crime is committed only if the operation of the business without a license is “punishable as a misdemeanor or a felony under State law.” 18 U.S.C. § 1960(b)(1)(A). Since October 1, 2002, operating a money transmitting business without a Maryland license can be “punished” as a misdemeanor or felony only if the violation was knowing and willful. It necessarily follows that these scienter elements must be established before a defendant’s conduct will qualify under § 1960(b)(1)(A) as “punishable as a misdemeanor or a felony under State law.” Just as there can be no violation of § 1960(b)(1)(A) where a state does not require a license or does not penalize the lack of a license, there can be no violation of § 1960(b)(1)(A) where the conduct at issue does not satisfy the elements of the state misdemeanor or felony offense.
The last phrase of § 1960(b)(1)(A) does not nullify this express requirement of the law. Rather, this language clarifies how the 2001 amendments to § 1960 changed the scienter requirements of the federal offense. Prior to 2001, a violation of § 1960(b)(1)(A) only occurred if there was an “intentional[ ]” violation of the state licensing law. See 18 U.S.C. § 1960 (2000) (amended 2001). Thus, even in states that had no mens rea requirement, the federal statute supplied its own scienter requirement for the federal offense. The amended language of § 1960(b)(1)(A) makes clear that federal law no longer supplies an intent requirement; in states that do not require scienter for a misdemeanor or felony conviction, scienter is not necessary for a § 1960(b)(1)(A) conviction. The last phrase of the statute simply does not speak to the situation here, where it is state law that requires mens rea.
For these reasons, I would hold that the Government must prove a knowing and willful violation of Maryland’s licensing law for conduct occurring after October 1, 2002.[2] As written, the indictment fails to *575 allege a knowing and willful violation of the Maryland licensing law for activities after that date and omits those scienter requirements from its recitation of the Maryland law. See J.A. 16 (“since October 1, 2002, it was a felony under Maryland state law, as codified in MD. CODE ANN., Financial Institutions, Title 12, Subtitle 4, Section 12-430, to operate a money transmittal business without such a license.”). I would therefore affirm the dismissal of the indictment.
II.
Also before us is whether § 1960(b)(1)(A) and (B) are constitutionally infirm to the extent that they fail to require a knowing violation of the relevant licensing and registration requirements.[3] The Talebnejads argue that to expose an individual to criminal liability for morally blameless activity (such as operating a money transmitting business), due process requires that the Government prove that the individual knew that he or she was in violation of a law or regulation. Although I join the majority in rejecting this facial constitutional challenge, I write separately to express my concern about the constitutionality of § 1960(b)(1)(A) and (B) in some circumstances.
Although Congress has “wide latitude” to “declare an offense and to exclude elements of knowledge and diligence from its definition,” Lambert v. California, 355 U.S. 225, 228, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), this power is not without constitutional limits. See United States v. Foley, 598 F.2d 1323, 1335 (4th Cir.1979) (“[Tjhere are undoubtedly due process restrictions on the legislature’s power to define certain conduct as criminal absent particular scienter requirements.”). In Lambert, the Supreme Court squarely confronted these boundaries and held that due process places limits on the application of the principle that “ignorance of the law will not excuse.” 355 U.S. at 228, 78 S.Ct. 240. In that case, the ordinance at issue made it a crime for a felon to remain in Los Angeles for more than five days without registering with the police. Id. at 226, 78 S.Ct. 240. The Court overturned the defendant’s conviction, reasoning that the defendant, who did not know of the registration ordinance; lacked notice that her conduct amounted to a crime, as required by due process. Id. at 228, 78 S.Ct. 240. Specifically, nothing about the defendant’s passive conduct of being present in Los Angeles after having been convicted of a felony suggested the need to inquire about a registration requirement. Id. at 229, 78 S.Ct. 240.
Following the reasoning of Lambert, I agree that the two provisions of the present statute are not facially unconstitutional. See United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (to establish that a statute is unconstitutional on its face, “the challenger must establish that no set of circumstances exists under which the Act would be valid”). The statute here requires that one must *576 “knowingly conduct[], control[], manage[], supervise[], direct [], or own[] all or part of an unlicensed money transmitting business” to be convicted. 18 U.S.C. § 1960(a). In many cases, activities such as conducting and controlling a money transmitting business would provide “circumstances which might move one to inquire as to the necessity of [licensing and] registration.” See id. at 229, 78 S.Ct. 240 (distinguishing the Lambert ordinance from licensing statutes that regulate business activities). That is, the individual’s direct and knowing involvement in operating the money transmitting business would usually provide adequate notice that his or her conduct might be regulated by the law.
However, I am concerned that in certain circumstances, the conduct covered by the statute might not provide constitutionally sufficient notice of possible regulation. For example, under the statute, a person who knowingly owns just five percent of a money transmitting business is covered by the prohibition. Such a person would be subject to up to five years’ imprisonment for the business’s noncompliance with the licensing, registration, or regulatory requirements. In my view, a significant due process question exists regarding whether the individual’s conduct would provide notice of a possible crime. Owning a small stake in a business does not require involvement in the business activity. Indeed, it may well be greatly attenuated from the operation of the enterprise. In such a case, minimal ownership resembles the passive conduct proscribed by the flawed Lambert ordinance, raising a question as to whether the individual’s conduct provides the notice required by due process. No doubt other circumstances could raise similar constitutional doubts, given the breadth of the statute. I would therefore leave open the question of whether certain situations could give rise to a successful as-applied challenge to § 1960(b)(1)(A) or (B).
III.
For the reasons stated, I would affirm the dismissal of the indictment. Moreover, although I agree that the charged provisions of § 1960 are not facially unconstitutional, I would leave for another day the question of whether § 1960(b)(1)(A) and (B) are unconstitutional in certain circumstances. I concur in the decision to dismiss the Talebnejads’ cross-appeal.

. Section 1960(b)(1)(B) instead criminalizes a violation of the federal registration requirements of 31 U.S.C. § 5330 and the regulations prescribed thereunder. I agree with the majority that clear Congressional intent to the contrary , precludes us from construing § 1960(b)(1)(B) to contain a mens rea element.

. Because I believe the obligation to prove a knowing and willful violation of Maryland's licensing law is clear from the plain language of § 1960(b)(1)(A) and the Maryland law it references, I reject the Talebnejads’ argument that § 1960(b)(1)(A) is void for vagueness. See United States v. Klecker, 348 F.3d 69, 71 (4th Cir.2003) (“The void-for-vagueness doctrine requires that penal statutes define *575 crimes so that ordinary people can understand the conduct prohibited and so that arbitrary and discriminatory enforcement is not encouraged.”) (internal quotation marks omitted). Even if the different scienter requirements made the statute ambiguous, I would reach the same result through applying the rule of lenity. See United States v. Lanier, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (holding that the rule of lenity "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered"). A knowing and willful violation of Maryland's licensing law would be clearly covered by both of the possible interpretations of the provision.

. As noted above, I would not find scienter to be required for conduct prior to October 1, 2002 under § 1960(b)(1)(A), and I agree that scienter is not required under § 1960(b)(1)(B).